1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JAMES V. CAICO,

11              Petitioner,                    No. CIV S-02-1363 DFL DAD P

12        vs.

13   D. L. RUNNELS, et al.,

14              Respondents.             FINDINGS & RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the judgment of conviction

18   entered against him in the El Dorado County Superior Court on charges of being a felon in

19   possession of a firearm.[1]  He seeks relief on the grounds that: (1) the evidence was insufficient to

20   support his conviction for being a felon in possession of a firearm; (2) the prosecutor engaged in

21   prejudicial misconduct at his trial; (3) his right to due process was violated by the behavior of a

22   trial witness; and (4) he received ineffective assistance of trial and appellate counsel.  Upon

23   careful consideration of the record and the applicable law, the undersigned will recommend that

24   petitioner's application for habeas corpus relief be denied.

25   _____

26        [1]  Petitioner suffered several other convictions in the same state court proceedings, but he
     does not appear to be challenging those convictions in the pending habeas petition.

                                          1

BACKGROUND[2]

Defendant appeals from the judgments and sentence he received after he was convicted of misdemeanor battery and felon in possession of a firearm in two separate cases.

The cases were consolidated for sentencing, and the trial court imposed an aggregate term of 10 years 4 months.

On appeal, defendant contends (1) the prosecutor committed misconduct during the evidentiary phase and argument in his felony trial, and (2) that the court erred in sentencing. The People concede defendant's second contention is correct. We shall modify the sentence as set forth below, and otherwise affirm the judgments.

FACTUAL AND PROCEDURAL BACKGROUND

Case No. WS98F00491

The following evidence was adduced at trial:

While defendant was on probation for perjury and welfare fraud, defendant's probation officer, Joseph White, conducted a probation search of defendant's residence in defendant's presence. White did not make a full search of the premises, and did not find any guns at that time.

A few months later, while defendant was in jail on an unrelated matter, defendant's former wife, Angela, asked White about getting her belongings from defendant's residence. White suggested she pursue this under the arrangements made during her divorce. In the course of their conversation, Angela told White she was concerned that defendant had a gun at the residence.

Angela and her boyfriend retrieved her property from the residence. A rifle was discovered in a cubbyhole in the master bedroom closet, engraved "Caico" and with defendant's social security number. Defendant marked most of his tools this way. Angela first turned over the rifle to defendant's landlord and then transferred it to defendant's oldest daughter. She phoned the Sacramento County Sheriff's Department to report what she had found and done with the gun. A sheriff's deputy retrieved the gun from defendant's daughter and found it to be in working order but unregistered.

---

[2] The following summary is drawn from the November 30, 2000, opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 1-4, filed on June 21, 2002, as Exhibit B to petitioner's application for a writ of habeas corpus filed in this court on June 21, 2002.

The jury returned a verdict finding defendant guilty of being a felon in possession of a firearm.  (Pen. Code, § 12021.1 [all further nonspecific section references are to this code].)  In addition, defendant admitted he had suffered a prior conviction of assault with a deadly weapon (§ 245), a strike within the meaning of the three strikes law.  (§§ 1170.12, subds. (a) - (d); 667, subds. (b) - (I).)

Case No. WS98M01941

A second jury found defendant guilty of one count of battery on a probation officer, a misdemeanor.  (§ 243, subd. (b).)

Thereafter, in response to petitions for revocation of probation, he admitted violating the terms and conditions of probation requiring him to "obey all laws" in connection with previously filed charges of welfare fraud (Welf. & Inst. Code, § 10980) and perjury (§ 118) in cases Nos. WS97F0011 and WS97F0012.

Sentencing

The court consolidated all the matters for sentencing and heard defendant's motion to strike a prior strike conviction for assault with a deadly weapon (§ 245, subd. (a)) pursuant to People v. Superior Court (Romero) (1996) 13 Cal.4th 497.  The court denied the Romero motion, denied defendant's application for probation, and sentenced defendant as follows: Defendant was ordered to serve one year in county jail followed by nine years four months in state prison.  The one-year county jail term was imposed for the misdemeanor assault (case No. WS98M01941).  Case No. WS09F00491 (felon possession) was selected for the principal prison term.  The trial court selected the upper term of three years for the offense of possession of a firearm, and doubled the term to six years pursuant to the three strikes law.  Consecutive subordinate terms for case Nos. WS97F0011 and WS97F0012 were ordered as follows: One-third the middle term of three years (one year) doubled to one year four months, for perjury.  Defendant was ordered to pay a restitution fine of $1,000 pursuant to section 1202.4, and a separate fine of $1,000 was imposed and suspended pursuant to section 1202.45.  The trial court granted defendant credit for 400 days actually served and 200 days of conduct credit, for a total of 600 days of presentence custody credit.

After petitioner's appeal was unsuccessful, he filed a "motion for rehearing" in the California Court of Appeal and a petition for review in the California Supreme Court. (Pet'r's Opp'n to Resp'ts' October 4, 2002, Mot. to Dismiss, at 5, 6.)  The California Supreme Court

/////

rejected the petition for review due to lack of jurisdiction.  (Order filed June 3, 2003 at 2.)[3]  The

court advised petitioner in a series of letters that jurisdiction was lost when the time expired for

filing a petition for review of a decision by the California Court of Appeal.  (Id.)  Petitioner

subsequently filed two petitions for a writ of habeas corpus in the California Supreme Court.

Those petitions are described in more detail below.

ANALYSIS

I.  Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

(1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA").  See Lindh v.Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall
> not be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of the
> claim -
>
> (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

---

[3]  See Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.l (N.D. Cal. 1978) (judicial
notice may be taken of court records), aff'd, 645 F.2d 699 (9th Cir. 1981).

1          (2) resulted in a decision that was based on an unreasonable
2     determination of the facts in light of the evidence presented in the
      State court proceeding.

3  28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

4  Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

5          The court looks to the last reasoned state court decision as the basis for the state

6  court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

7  court reaches a decision on the merits but provides no reasoning to support its conclusion, a

8  federal habeas court independently reviews the record to determine whether habeas corpus relief

9  is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

10  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

11  reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

12  AEDPA's deferential standard does not apply and a federal habeas court must review the claim

13  de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

14  1167 (9th Cir. 2002).

15  II.  Petitioner's Claims[4]

16      A.  Innocence/Sufficiency of the Evidence

17          Petitioner claims that he is factually innocent of being a felon in possession of a

18  firearm.  (Third Am. Pet. (hereinafter Pet.) at consecutive pgs. 4, 5.)  He argues that he

19      was neither in actual or constructive possession of the rifle.
20      Petitioner was incarcerated at the time the weapon was discovered
        by purported third parties who were not police.  Petitioner was a
        victim of a conspiracy to imprison him and such denied due
21      process to the petitioner.

22  (Id. at consecutive p. 5.)  Petitioner also claims that he has received documentary proof that the

23  rifle found in his home was purchased by his former wife.  (Id. at consecutive p. 4.)  In support of

24  this contention, petitioner has attached a document to his petition indicating that Angela Caico

25

26          [4] Petitioner's claims are difficult to decipher.  This court has responded to all federal
    constitutional claims stated in the petition.

was the purchaser or transferee of a rifle on April 1, 1983.  (Pet., Ex. entitled "22 rifle current

document.")[5]  These allegations state a claim that the evidence introduced at petitioner's trial was

insufficient to support his conviction of being a felon in possession of a firearm.

Petitioner raised this same claim in two petitions for a writ of habeas corpus filed

in the California Supreme Court.  (Petition for Writ of Habeas Corpus filed November 27, 2001,

at 3; Petition for Writ of Habeas Corpus filed August 25, 2003, at 9; both attached as exhibits to

the instant petition).  The petition filed November 27, 2001 was summarily denied.  (Pet., Ex.

marked with page number "60.")  The petition filed August 25, 2003 was denied with a citation

to In re Clark (1993) 5 Cal. 4th 750.  (Pet., "Exhibit B.")  Under these circumstances, this court

will independently review the record to determine whether habeas corpus relief is available under

section 2254(d) with respect to this claim.  Himes, 336 F.3d at 853; Delgado, 223 F.3d at 982.

The Due Process Clause of the Fourteenth Amendment "protects the accused

against conviction except upon proof beyond a reasonable doubt of every fact necessary to

constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  There

is sufficient evidence to support a conviction if, "after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  See also

Prantil v. California, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam).  "[T]he dispositive question

under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond

a reasonable doubt.'"  Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson,

443 U.S. at 318).  A petitioner in a federal habeas corpus proceeding "faces a heavy burden when

challenging the sufficiency of the evidence used to obtain a state conviction on federal due

process grounds."  Juan H. v. Allen, 408 F.3d 1262, 1274, 1275 & n.13 (9th Cir. 2005).  In order

---

[5]  The exhibits attached to the instant petition are not clearly marked, nor are they marked in consecutive order.  Accordingly, the court will identify the exhibits with the most prominent numbers or letters appearing on each exhibit.

1  to grant the writ, the habeas court must find that the decision of the state court reflected an

2  objectively unreasonable application of Jackson and Winship to the facts of the case.  Id.

3          The court must review the entire record when the sufficiency of the evidence is

4  challenged in habeas proceedings.  Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985),

5  vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is

6  the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

7  reasonable inferences from basic facts to ultimate facts."  Jackson, 443 U.S. at 319.  If the trier of

8  fact could draw conflicting inferences from the evidence, the court in its review will assign the

9  inference that favors conviction.  McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994).  The

10  relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether

11  the jury could reasonably arrive at its verdict.  United States v. Mares, 940 F.2d 455, 458 (9th

12  Cir. 1991).  "The question is not whether we are personally convinced beyond a reasonable

13  doubt.  It is whether rational jurors could reach the conclusion that these jurors reached."

14  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas court determines the

15  sufficiency of the evidence in reference to the substantive elements of the criminal offense as

16  defined by state law.  Jackson, 443 U.S. at 324 n.16; Chein, 373 F.3d at 983.

17          In order to find petitioner guilty of being a felon in possession of a firearm, the

18  jury was required to find that petitioner "own[ed] or ha[d] in his possession or under his custody

19  or control any firearm."  (Cal. Penal Code § 12021.1; see also Reporter's Transcript on Appeal,

20  pages 1 through 188  (RT) at 123.)  The trial court instructed the jury that a conviction on this

21  count required proof that defendant "owns or has in his possession or under his custody or

22  control any pistol, revolver, or other firearm."  (Clerk's Transcript on Appeal (CT) at 228.)

23  "Possession" was further defined in the instruction to encompass "[a]ctual possession and

24  constructive possession."  (Id.)  In this regard, the jury was instructed as follows:

25          Actual possession requires that a person exercise direct physical
        control over a thing .  [¶] Constructive possession does not require
26          actual possession, but does require that a person knowingly

7

exercise control over or the right to control a thing, either directly
or through another person or persons.  [¶] One person may have
possession alone, or two or more persons together may share actual
or constructive possession.

(Id.)  The prosecutor was also required to prove that petitioner had knowledge of the presence of
the rifle. (RT at 124.)  "Implicitly, the crime is committed the instant the felon in any way has a
firearm within his control."  People v. Jones, 103 Cal. App. 4th 1139, 1145-46 (2002).

Viewing the evidence in the light most favorable to the verdict, the undersigned
concludes that there was sufficient evidence from which a reasonable trier of fact could have
found beyond a reasonable doubt that petitioner owned or had a firearm in his possession or
control and that he had knowledge of its presence.  As described above, the evidence introduced
at trial indicated that petitioner had suffered a prior felony and that a rifle engraved with
petitioner's last name and social security number was found hidden in the master bedroom of his
home. (RT at 49.)  This evidence was sufficient for a rational juror to find that petitioner was
guilty of being a felon in possession of a firearm.  Indeed, in none of petitioner's filings does he
state that he had no knowledge of the presence of the rifle in his home.  The fact that petitioner is
not the registered owner of the rifle, even if true, does not change this result. The prosecutor was
not required to prove that petitioner purchased the gun, but only that he had actual or constructive
possession of it.  See People v. Killman, 51 Cal. App. 3d 951 (1975) (defendant convicted of
being a felon in possession of a firearm where he had given his girlfriend money to purchase a
gun and then used it in a robbery); People v. Garfield, 92 Cal. App. 3d 475, 478 (1979)
(defendant was convicted of possession of a weapon by a narcotics addict based upon his
possession of a firearm stolen during a burglary).

Petitioner contends that the sales receipt for the firearm establishes that Ms.
Destfino was the owner, and therefore the possessor, of the rifle.  This contention is simply
incorrect.  As is illustrated by the cases cited above, a person obviously can possess an object for
purposes of California Penal Code Section 12021.1 even if he did not purchase it.   Moreover, the

1   statute does not require that the defendant be in possession of the firearm at the time it was

2   discovered or that the weapon be discovered by police officers.  (See RT at 123.)  Therefore, it is

3   not dispositive of this claim that petitioner was incarcerated at the time the weapon was found or

4   that his former wife alerted the authorities to the presence of the firearm.[6]

5              Finally, there is no evidence before the court that petitioner was the victim of a

6   conspiracy between his former wife and her boyfriend to "remove the petitioner from society"

7   and acquire his assets, as he alleges.  (See Mem. P. & A. to Resp'ts' Notice of Lodging and

8   Answer for Writ of Habeas Corpus (Traverse) at 5.)  Petitioner's insinuation that his former wife

9   and her boyfriend planted the firearm in his residence is unsupported by any record evidence and

10   does not establish a conspiracy or that petitioner is innocent of the charged crime.  Petitioner's

11   former wife and her boyfriend testified that while petitioner was in jail on another matter, they

12   returned to petitioner's residence to obtain items belonging to the former wife and her children

13   and while going through the house discovered the rifle in question with ammunition hidden in a

14   cubbyhole of petitioner's master bedroom closet.  (See RT at 32-61, 67-89.)  Because there was

15   substantial evidence presented at trial to support petitioner's conviction on the charge of being a

16   felon in possession of a firearm, the decision of the California Supreme Court rejecting this claim

17   is not objectively unreasonable.  To the extent petitioner is attempting to make a free standing

18   claim of actual innocence, his claim must also fail.  In Herrera v. Collins, 506 U.S. 390 (1993), a

19   capital case, a majority of the Supreme Court assumed without deciding that the execution of an

20   innocent person would violate the Constitution.  A different majority of the Supreme Court

21   explicitly so held.  Compare 506 U.S. at 417 with 506 U.S. at 419 and 430-37.  See also House v.

22   Bell, ___ U.S. ___, 126 S. Ct. 2064, 2084 (2006) (declining to resolve whether federal courts

23   may entertain claims of actual innocence but concluding that the petitioner's showing of

24   innocence in that case fell short of the threshold suggested by the Court in Herrera); Jackson v.

25   _____

26      [6]  It appears that petitioner was incarcerated in the County jail for 60 days at the time the firearm was discovered in his home by his ex-wife and her boyfriend.  (RT at 18, 25.)

1 Calderon, 211 F.3d 1148, 1164 (9th Cir. 2000); Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir.

2 1997) (en banc).  Although the Supreme Court did not specify the standard applicable to this type

3 of "innocence" claim, it noted that the threshold would be "extraordinarily high" and that the

4 showing would have to be "truly persuasive."  Herrera, 506 U.S. at 417.  See also Carriger, 132

5 F.3d at 476.  The Ninth Circuit has determined that in order to be entitled to relief on such a

6 claim a petitioner must affirmatively prove that he is probably innocent.  Jackson, 211 F.3d at

7 1165; Carriger, 132 F.3d at 476-77.

8          Assuming arguendo that a free-standing claim of innocence may be maintained in

9 this non-capital habeas case, the undersigned concludes that petitioner has not made the

10 necessary showing to be entitled to relief.  Petitioner's unsupported allegation that his former

11 wife conspired to have him incarcerated so that she and her boyfriend could confiscate his assets

12 do not convincingly demonstrate that petitioner is more likely than not factually innocent.  See

13 Jackson, 211 F.3d at 1165 (showing required for a claim of actual innocence "contemplates a

14 stronger showing than insufficiency of the evidence to convict") (quoting Carriger, 132 F.3d at

15 476).  Nor is petitioner's innocence demonstrated by documents showing that petitioner's former

16 wife purchased the firearm in question.  As discussed above, petitioner could be deemed in

17 possession of a firearm even though he did not purchase it.  The decision of the California

18 Supreme Court rejecting petitioner's claims of insufficient evidence and actual innocence is not

19 contrary to or an unreasonable application of clearly established federal law.  Accordingly,

20 petitioner is not entitled to habeas relief on these claims.

21          B.  Prosecutorial Misconduct

22          Petitioner raises several claims of prosecutorial misconduct.  The court will

23 address these claims in turn below.

24          1.  False Testimony

25          Petitioner argues that his former wife, prosecution witness Angela Destfino,

26 testified falsely at his preliminary hearing when she stated that she did not purchase the rifle

1  found in petitioner's home.  (Mot. for New Trial with Supporting Decl. of James V. Caico, filed

2  September 7, 2004 (Supplemental Traverse) at 6.)  Petitioner also alleges that Ms. Destfino

3  pretended at trial, "with the help of the prosecutor," to be confused about whether and, if so,

4  when, she had seen petitioner with the rifle.  (Traverse at 2; see also Pet. at consecutive p. 5.)

5  Finally, petitioner claims, without elaboration or explanation, that Gregory Hurlbut, Destfino's

6  boyfriend, also testified falsely at trial.  (Traverse at 4-5; Supplemental Traverse at 5.)  The court

7  will construe these allegations as a claim that the prosecutor committed misconduct by

8  knowingly presenting false testimony at petitioner's trial.

9          It is not clear to this court that petitioner has exhausted these claims in state court.

10  However, even if the claims are unexhausted, relief should be denied pursuant to 28 U.S.C. §

11  2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits,

12  notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the

13  State").  A federal court considering a habeas petition may deny an unexhausted claim on the

14  merits when it is perfectly clear that the claim is not "colorable."  Cassett v. Stewart, 406 F.3d

15  614, 624 (9th Cir. 2005).  Petitioner's claims that Ms. Destfino and Mr. Hurlbut testified falsely

16  and that the prosecutor knew their testimony was false are not "colorable" and should be rejected.

17          A violation of a defendant's rights occurs if the government knowingly uses false

18  evidence in obtaining a conviction.  Giglio v. United States, 405 U.S. 150, 153-54 (1971); Napue

19  v. Illinois, 360 U.S. 264, 269 (1959).  Due process is violated in such circumstances regardless of

20  whether the false testimony was obtained through the active conduct of the prosecutor, Hysler v.

21  Florida, 315 U.S. 411 (1942); Mooney v. Holohan, 294 U.S. 1033 (1935), or was unsolicited.

22  Napue, 360 U.S. at 269 ("[t]he same result obtains when the State, although not soliciting false

23  evidence, allows it to go uncorrected when it appears").  In order to prove that the State has

24  violated the Fourteenth Amendment by relying on such testimony, a defendant must demonstrate

25  that the State's witness testified falsely; that the testimony was material; and that the prosecution

26  /////

1  knew that the testimony was false.  Giglio, 405 U.S. at 153-54; see also Ortiz v. Stewart, 149

2  F.3d 923, 936 (9th Cir. 1998).

3          A review of the transcript of petitioner's preliminary hearing reflects that Ms.

4  Destfino testified that petitioner came into possession of a rifle and kept it in the closet of his

5  bedroom, although she was not aware that petitioner had actually purchased the rifle.  (CT at 133,

6  138-39.)  She testified that she did not purchase the rifle herself and that it was not hers.  (Id. at

7  137-38.)  Ms. Destfino further stated that the number engraved on the rifle was petitioner's social

8  security number and that the rifle "belonged" to petitioner.  (Id. at 138, 141.)  She also testified

9  that she did not recall seeing petitioner holding the rifle and that the first time she saw the gun

10  was when Mr. Hurlbut found it in petitioner's bedroom.  (Id. at 143-44.)

11          At trial, however, Destfino testified that she may have seen the rifle prior to the

12  time it was discovered by her boyfriend, Mr. Hurlbut, but that she did not know, did not

13  remember, and did not want to remember.  (RT at 72.)  When confronted with her preliminary

14  hearing testimony indicating that she had not seen the rifle prior to the time she and Mr. Hurlbut

15  went to petitioner's cabin to retrieve her belongings, she testified that she was "confused then"

16  and that she "[didn't] know."  (Id. at 73.)  Ms. Destfino was questioned extensively at trial about

17  the inconsistencies between her testimony at the preliminary hearing and her testimony at trial

18  with regard to when she had first seen the rifle.  (Id. at 72-78.)  She testified that she was

19  "confused" at the preliminary hearing and that it was "hard to testify" at trial.  (Id. at 77.)

20  Specifically, Ms. Destfino stated that it was difficult for her to testify at petitioner's trial because

21  she was thinking of her children.  (Id. at 78.)  Later in the trial, the prosecutor asked Ms. Destfino

22  several questions designed to show that she had actually seen petitioner with a chrome pistol, and

23  not the rifle.  (Id. at 84-85.)  When asked whether she had "seen or not seen this rifle," she stated,

24  "at some point in time, but I don't remember when."  (Id. at 85.)

25          As noted above, Ms. Destfino testified at the preliminary hearing that she did not

26  purchase the rifle.  Petitioner has submitted evidence to this court that her name is on the bill of

12

1   sale.  However, there is no evidence suggesting that the prosecutor knew Destfino's preliminary

2   hearing testimony was false at the time it was given.  Similarly, although the record reflects that

3   at trial Ms. Destfino appeared either confused or reluctant to testify about whether, or when, she

4   had seen petitioner with the rifle (see id. at 71-73, 75-78), there is no evidence that her testimony

5   in this regard was false or that the prosecutor knew it to be false.  It is true that Destfino's

6   testimony was confusing and contradictory.  However, petitioner's jury was made fully aware of

7   the inconsistencies between her testimony at the preliminary hearing and her testimony at trial

8   and was therefore able to use that information in evaluating her credibility.  (Id. at 72-73).  The

9   court also notes that Destfino's testimony with regard to whether she purchased the rifle was not

10  material to the charges against petitioner.  The prosecutor was not required to prove that

11  petitioner purchased the rifle.  Further, testimony given at the preliminary hearing was not before

12  the jury at trial and could have had no effect on the verdict.  Indeed, Ms. Destfino was not asked

13  at trial whether she purchased the firearm.  In short, the state court record does not suggest that

14  the prosecutor knowingly presented perjured testimony or otherwise committed misconduct with

15  respect to the testimony of Angela Destfino.

16          Finally, petitioner's allegation that Mr. Hurlbut testified falsely is conclusory and

17  unsupported by any reference to the trial record and is therefore insufficient to establish a due

18  process violation.  See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory

19  allegations which are not supported by a statement of specific facts do not warrant habeas

20  relief'") (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).  Moreover, there is no evidence

21  that Mr. Hurlbut testified falsely about a material matter during his relatively brief appearance at

22  petitioner's trial.  (See RT at 40-61.)

23          For all of these reasons, petitioner is not entitled to habeas corpus relief on his

24  claim that the prosecutor knowingly presented false testimony.

25  /////

26  /////

2.  <u>Unfair Questioning and Remarks During Closing Argument</u>

Petitioner claims that the prosecutor engaged in "unfair leading of jurors at trial closing." (Pet. at consecutive p. 5.)  He also complains about testimony given by Ms. Destfino to the effect that she had previously seen petitioner with another firearm: a "chrome pistol."  (<u>Id.</u>) Specifically, petitioner claims that testimony about the pistol allowed the prosecutor to get before the jury "uncharged bad acts not in discovery."  (<u>Id.</u>)  Due to their similarity, this court will assume that petitioner is raising the same two claims he raised on direct appeal.

On appeal, petitioner claimed that the prosecutor's questions to Ms. Destfino regarding a chrome pistol and certain statements made by the prosecutor in closing argument constituted prejudicial misconduct.  (Opinion at 4.)  The California Court of Appeal fairly described the background to these claims as follows:

> During the jury trial on the charge of felon in possession, the prosecutor cross-examined Angela concerning her request for assistance in retrieving her belongings, as well as her awareness that defendant had owned a gun in the past.  The offending colloquy was as follows:
>
> "Q.  Now, you indicated to Mr. Bailey [defense counsel] that – well, he asked had you ever seen the defendant with the rifle, and you said you think in the summer of '96.
>
> "Isn't it true in the summer of '96, that it was a chrome pistol that you saw the defendant with, not a rifle?
>
> "MR. BAILEY: Objection.  Assumes facts not in evidence.
>
> "MS. EHLERS: He opened the door.
>
> "MR. BAILEY: And it is not relevant.
>
> "THE COURT: Approach here, please.
>
> " .....................................................................................................
>
> "Q.  BY MS. EHLERS: Isn't it true, . . . that when you speak of the summer of '96 seeing the defendant with a gun, it is a chrome pistol that you remember?
>
> "A.  Yes, correct.

"Q.  And it involved a neighborhood boy; correct?

"A.  Yes it did, correct.

"Q.  So have you, in the past six or seven years, seen or not seen this rifle that we have shown you that's marked people's 1?
"A.  At some point in time, but I don't remember when."

After an off-the-record discussion with counsel, the court gave a limiting instruction as follows:  "Sorry to keep you waiting, folks, we had an extended discussion about this evidence regarding the chrome-plated pistol. [¶] You will recall that the charge at issue in this case is whether or not in September of 1998 Mr. Caico possessed or had control of this rifle.  That is the only charge at issue here, having been previously convicted of a felony. [¶] The only evidence relevant to this evidence, and we're spending a lot of time on it, is a collateral issue.  And the only relevance for the chrome-plated pistol is to – in regard to the credibility of [defendant's ex-wife] whether she saw the rifle in [the] summer of '96 or a chrome-plated pistol.  And that's how we got off on this.  And you can consider that evidence only for that limited purpose: does she know what she's talking about here as to whether she saw this rifle previously at the premises where they lived, or did she see a chrome-plated pistol. [¶] So only consider all of this evidence in the context of her credibility."

Thereafter, in closing argument, the prosecutor made this statement:  "We ask that you return a verdict of guilt, because no felon should be allowed to have a gun in his home in this county.  And that's the law, and you must follow it."  In sustaining defendant's objection to this statement, the court immediately admonished the jury as follows:  "What I want you to do is follow the law that I stated to you.  You are here to determine whether Mr. Caico possessed this rifle, knowingly possessed this rifle.  Don't get involved in setting policy here.  We're not here for that purpose.  We're only here for determining what the facts are.  Did these facts occur as charged in this case? [¶] So disregard that last statement, folks.  That is more an appeal to your sympathy, passion, and the kind of thing that I told you not to take into account.  Follow my instructions."

(Id.)

a.  Unfair Questioning

The state appellate court concluded that the prosecutor's questioning of Ms. Destfino about the chrome pistol did not violate petitioner's federal constitutional right to due process.  The appellate court explained its reasoning as follows:

15

The prosecutor's questioning fails to qualify as misconduct under federal law.  Defendant's rights to a fair trial were not compromised by these questions.  Defendant theorizes the questioning brought out evidence of prior bad acts contrary to the proscription in Evidence Code section 1101,[7] leading to an inference that defendant had brandished a weapon previously, thereby disclosing a propensity to possess a firearm.  This inference is not supported by the record.  Defendant's brief contains the only indication that defendant had previously been involved in "brandishment" of a weapon.  Nothing that the jury heard could reasonably have led to such an inference.  Accordingly, defendant has failed to establish prejudice, an essential prerequisite for finding prosecutorial misconduct.  (citation omitted.)

Moreover, the trial court's admonition, promptly given, explained that the only use for which the jury could apply the testimony was to assess the witness's credibility, as expressly authorized by Evidence Code section 1101, subdivision (c).  This prompt admonition cured any possible confusion or misunderstanding, as the jury is presumed to have followed the court's instructions.  (citation omitted.)

* * *

In any event, even if the court erred in permitting the challenged testimony and questioning, the error was harmless.  In light of the evidence that defendant had been in constructive possession of the weapon, which was found secreted in his home and engraved with his name and social security number in the same manner as his other tools, it is not reasonably probable that a result more favorable to defendant would have occurred absent the error, if any.  (citations omitted.)

(Id. at 7-9.)

A defendant's due process rights are violated when a prosecutor's misconduct

renders a trial fundamentally unfair.  Darden v. Wainwright, 477 U.S. 168, 181 (1986).

However, such misconduct does not, per se, violate a petitioner's constitutional rights.  Jeffries v.

Blodgett, 5 F.3d 1180, 1191 (9th Cir. 1993) (citing Darden, 477 U.S. at 181, and Campbell v.

---

[7]  Evidence Code section 1101 provides in relevant part: "(a) . . . evidence of a person's character . . . (whether in the form of an opinion, evidence of reputation or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion. [¶] . . . [¶] (c)) Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness."

1   Kincheloe, 829 F.2d 1453, 1457 (9th Cir. 1987)).  Claims of prosecutorial misconduct are

2   reviewed "'on the merits, examining the entire proceedings to determine whether the prosecutor's

3   [actions] so infected the trial with unfairness as to make the resulting conviction a denial of due

4   process.'"  Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted).  See also

5   Greer v. Miller, 483 U.S. 756, 765 (1987); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974);

6   Turner v Calderon, 281 F.3d 851, 868 (9th Cir. 2002).  Relief on such claims is limited to cases

7   in which the petitioner can establish that prosecutorial misconduct resulted in actual prejudice.

8   Johnson, 63 F.3d at 930 (citing Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993)); see also

9   Darden, 477 U.S. at 181-83; Turner, 281 F.3d at 868.  Put another way, prosecutorial misconduct

10  violates due process when it has a substantial and injurious effect or influence in determining the

11  jury's verdict.  See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996).

12          For the reasons described by the state appellate court, the prosecutor's questions

13  eliciting testimony about the chrome pistol did not render petitioner's trial fundamentally unfair

14  or have a substantial and injurious effect or influence in determining the jury's verdict.  This

15  court's review of the trial transcript reflects that the testimony about the chrome pistol was brief

16  and extremely vague.  (See RT at 85-86, 88.)  Further, the jury was instructed as to how to

17  evaluate this testimony for the limited purpose of determining Ms. Destfino's credibility.  Under

18  these circumstances, the testimony could not have had a significant impact on the verdict in this

19  case.  The decision of the California courts rejecting this claim is not contrary to or an

20  unreasonable application of clearly established federal law.  Accordingly, petitioner is not

21  entitled to federal habeas relief.

22          b.  Closing Argument

23          The California Court of Appeal also concluded that any error in connection with

24  the prosecutor's closing argument was harmless.  The appellate court reasoned as follows:

25          We next address defendant's contention that the prosecutor's
           argument appealed to the jurors' passion or prejudice.  The
26          prosecutor stated: " . . . no felon should be allowed to have a gun *in*

17

*his home in this county*." (Emphasis added.)  Section 12021.1 provides in relevant part "(a) . . . any person who has been previously convicted of any of the offenses listed in subdivision (b) and who owns or has in his or her possession or under his or her custody or control any firearm is guilty of a felony . . . . [¶] (b) . . . [¶] (24) Assault with a deadly weapon . . . ."  The prosecutor's gratuitous addition of the words "in his home in this county" changes the sense of the wording of the statute, and personalizes the law in a potentially inflammatory manner.  The argument thus appealed to the jury's passion or prejudice, and therefore constitutes misconduct.  (citations omitted.)

To evaluate whether prejudice flows from the prosecutor's argument, we must determine whether it is reasonably likely the jury could have construed or applied the prosecutor's comment in an objectionable fashion.  (citations omitted.)  There is no evidence that the jury actually misconstrued or misapplied this summary of section 12021.1.  Nor can we find it reasonably likely that the jury was misled by the prosecutor's paraphrasing.

However, even if we were to conclude that the prosecutor's argument was damaging, the resulting error was harmless in this case.  The jury's finding of guilt was based on overwhelming evidence, as set forth above.

There is no reasonable probability the result would have been more favorable to defendant had the misconduct not occurred.  (citation omitted.)  Moreover, the court promptly admonished the jury the argument appealed to their passion, that they should avoid getting involved in policy-setting, and to "[f]ollow [his] instructions."  We presume the jury followed the court's instructions.  (citation omitted.)  We conclude that any prejudicial effect of the prosecutor's misconduct was overcome by the court's prompt admonition.  (citation omitted.)

(Opinion at 9-10.)

In considering claims of prosecutorial misconduct involving allegations of improper argument the court is to examine the likely effect of the statements in the context in which they were made and determine whether the comments so infected the trial with unfairness as to render the resulting conviction a denial of due process.  Turner, 281 F.3d at 868; Sandoval v. Calderon, 241 F.3d 765, 778 (9th Cir. 2001); see also Donnelly, 416 U.S. at 643; Darden, 477 U.S. at 181-83.   Thus, in order to determine whether a prosecutor engaged in misconduct in closing argument, it is necessary to examine the entire proceedings to place the remarks in

1  context.  See United States v. Robinson, 485 U.S. 25, 33 (1988) ("[P]rosecutorial comment must

2  be examined in context. . . ."); Greer, 483 U.S. at 765-66; Williams v. Borg, 139 F.3d 737, 745

3  (9th Cir. 1998).

4          On collateral review, an error is not "harmless" if it "had substantial and injurious

5  effect or influence in determining the jury's verdict."  Brecht, 507 U.S. at 637.  In order to grant

6  habeas relief where a state court has determined that a constitutional error was harmless, a

7  reviewing court must determine: (1) that the state court's decision was "contrary to" or an

8  "unreasonable application" of Supreme Court harmless error precedent, and (2) that the petitioner

9  suffered prejudice under Brecht from the constitutional error.  Inthavong v. LaMarque, 420 F.3d

10  1055, 1059 (9th Cir. 2005); see also Mitchell v. Esparza, 540 U.S. 12, 17-18 (2003).  Both of

11  these tests must be satisfied before relief can be granted.  Inthavong, 420 F.3d at 1061.

12          For the reasons set forth in the opinion of the California Court of Appeal,

13  petitioner has failed to demonstrate that the prosecutor's comments in her closing argument

14  resulted in prejudice.  As explained by the state appellate court, the prosecutor's remarks were

15  brief, the trial judge neutralized any possible damage by giving a prompt curative instruction, and

16  the case against petitioner was substantial.  Accordingly, petitioner is not entitled to habeas relief

17  on this claim.  Inthavong, 420 F.3d at 1059.

18      C.  Due Process Violation

19          Petitioner claims that his right to due process was violated when, during the

20  preliminary hearing, prosecution witness Officer Doonan shouted out details about "prior bad

21  acts" that had not been disclosed in discovery.  (Pet. at consecutive p. 5; Traverse at 8-9.)

22          Petitioner raised this claim for the first time in a petition for a writ of habeas

23  corpus filed in the California Supreme Court.  (Pet. for Writ of Habeas Corpus filed August 25,

24  2003, at 9; attached as an exhibit to the instant petition).  The petition was denied with a citation

25  to In re Clark (1993) 5 Cal. 4th 750.  (Pet., "Exhibit B.")  Under these circumstances, this court

26  will review the claim de novo.  Nulph, 333 F.3d at 1056; Pirtle, 313 F.3d at 1167.

1    Petitioner does not cite to any portion of the state court record in support of this

2 claim, nor does he describe the prior bad acts to which he refers.  After a careful review of the

3 record, this court concludes that petitioner's due process right to a fair trial was not violated by

4 the testimony of Officer Doonan.  There is no evidence that Officer Doonan blurted out any

5 information about "prior bad acts" committed by petitioner or that he acted improperly in any

6 way either during the trial or the preliminary hearing.  Petitioner's unsupported allegations are

7 too vague and conclusory to state a due process claim and should be rejected on that basis.  See

8 Jones, 66 F.3d at 204; James, 24 F.3d at 26.[8]

9    D.  Ineffective Assistance of Trial and Appellate Counsel

10    Petitioner claims that he received ineffective assistance of trial and appellate

11 counsel.  Petitioner raised these claims for the first time in a petition for a writ of habeas corpus

12 filed in the California Supreme Court.  (Pet. for Writ of Habeas Corpus filed August 25, 2003, at

13 9; attached as an exhibit to the instant petition).  The petition was denied with a citation to In re

14 Clark (1993) 5 Cal. 4th 750.  (Pet., "Exhibit B.")  Under these circumstances, this court will

15 review these claims de novo.  Nulph, 333 F.3d at 1056; Pirtle, 313 F.3d at 1167.

16    1.  Legal Standards

17    The Sixth Amendment guarantees the effective assistance of counsel.  The United

18 States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

19 Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

20

21    [8] The state court record reflects that during a discussion outside the presence of the jury,
the prosecutor described Officer Doonan's prior involvement with petitioner and Destfino, which
22 included some recitation of petitioner's alleged history of engaging in threatening conduct.  (RT
at 94-96.)  This exchange did not involve any statements by Doonan and could not have had any
23 effect on the jury verdict because it occurred outside the presence of the jury.  The court also
notes that Officer Doonan's behavior at petitioner's preliminary hearing has no bearing on
24 petitioner's claim that he did not receive a fair trial.  Because petitioner's jury was not present at
the preliminary hearing, whatever occurred there could not have had a substantial or injurious
25 effect, or any effect at all, on the verdict in this case.  In any event, this court has reviewed the
preliminary hearing transcript and did not find any evidence of improper conduct on the part of
26 Officer Doonan.

counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  See Strickland, 466 U.S. at 687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  Second, a petitioner must establish that he was prejudiced by counsel's deficient performance.  Strickland, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  The Strickland standards apply to appellate counsel as well as trial counsel. Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).  Finally, a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

An indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751 (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined."  Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (Counsel is not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

1  meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a

2  showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

3  to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to establish prejudice in this

4  context, a petitioner must demonstrate that, but for counsel's errors, he probably would have

5  prevailed on appeal.  Id. at 1434 n.9.

6      2.  Trial Counsel

7      Petitioner argues that his trial counsel rendered ineffective assistance as a result of

8  numerous errors and deficiencies.  The court will address these claims in turn below.

9      a.  Failure to Call Trial Witnesses

10     Petitioner first claims that counsel improperly failed to use all available trial

11  witnesses, including "the investigator who should have taken the serial number of the rifle and

12  seek the owner purchaser."  (Pet. at 6; Supplemental Traverse at 7.)[9]  Petitioner has failed to

13  establish prejudice with respect to this claim.  Even assuming arguendo an investigator could

14  have testified that Ms. Destfino's name was on the purchase receipt for the rifle, this fact would

15  have been of little significance and had no impact on the outcome of petitioner's trial.  As

16  explained above, the identity of the actual purchaser of the rifle is largely irrelevant to the

17  charges against him.  Accordingly, petitioner is not entitled to relief with respect to this claim.

18     b.  Motion for Mistrial

19     Petitioner claims that his trial counsel rendered ineffective assistance in failing to

20  remind the court that it should declare a mistrial based on prosecutorial misconduct.  (Pet. at

21

22     [9]  Petitioner's claim with regard to witnesses other than the investigator is vague and
   conclusory and should be rejected on that basis.  See Jones, 66 F.3d at 204; James, 24 F.3d at 26.
23  Petitioner has also failed to establish prejudice with respect to this aspect of the claim.  See
   United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1987) (appellant failed to meet prejudice
24  prong of ineffectiveness claim because he offered no indication of what potential witnesses
   would have testified to or how their testimony might have changed the outcome of the hearing);
25  United States v. Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (no ineffective assistance
   because of counsel's failure to call a witness where, among other things, there was no evidence in
26  the record that the witness would testify).

consecutive p. 6.)  This court has concluded that the prosecutor did not commit misconduct.

Accordingly, a motion for mistrial on this basis would have been meritless.  An attorney's failure

to make a meritless objection or motion does not constitute ineffective assistance of counsel.

Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing Boag v. Raines, 769 F.2d 1341,

1344 (9th Cir. 1985)).  See also Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure

to take a futile action can never be deficient performance").

### c.   Motion for Release on Bail

Petitioner claims that his trial counsel rendered ineffective assistance in failing to

request petitioner's release on bail.  (Pet. at consecutive p. 7.)  To show prejudice under

Strickland from failure to file a motion, a defendant must show that: (1) had his counsel

filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2)

had the motion been granted, it is reasonable that there would have been an outcome more

favorable to him.  Kimmelman v. Morrison, 477 U.S. 365, 373-75 (1986).  Petitioner has failed

to demonstrate that a motion seeking his release on bail would have been meritorious and would

have resulted in a more favorable outcome to him at trial.  Accordingly, this claim should be

rejected.

### d.   Failure to Withdraw as Counsel

Petitioner claims that his trial counsel rendered ineffective assistance because he

failed to withdraw after petitioner moved for substitution of counsel pursuant to People v.

Marsden, 2 Cal. 3d 118 (1970).[10]  (Pet. at consecutive p. 7.)  Petitioner does not explain the

nature of the conflict, if any, between himself and his trial counsel, nor does he provide any

details about the substance of any Marsden hearing that was held by the trial court.  Counsel does

not have a duty to withdraw from representation of his client simply because the client has filed a

---

[10]  In that case the California Supreme Court held that a trial court must permit a
defendant seeking a substitution of counsel after the commencement of the prosecution's case to
specify the reasons for his request.  People v. Marsden, 2 Cal. 3d 118, 126 (1970).

1   motion for substitution of counsel.  Petitioner has not demonstrated that his counsel's

2   performance was deficient or that any prejudice resulted from counsel's conducting of the

3   defense.

4              e.  Failure to Interview Jurors

5              Petitioner claims that his trial counsel rendered ineffective assistance by failing to

6   interview the jurors after the verdict was announced.  (Pet. at consecutive pgs. 7-8.)  Petitioner

7   provides no explanation of what these interviews would have uncovered, nor does he address

8   why his counsel should have been prompted to conduct juror interviews.  The implication that

9   further investigation by counsel may have uncovered exculpatory evidence is insufficient to

10  establish prejudice.  Villafuerte v. Stewart, 111 F.3d 616, 632 (9th Cir. 1997) (petitioner's

11  ineffective assistance claim denied where he presented no evidence concerning what counsel

12  would have found had he investigated further, or what lengthier preparation would have

13  accomplished).

14             f.  Failure to Investigate Ownership of the Rifle

15             Petitioner claims that his trial counsel rendered ineffective assistance when he

16  failed to find out who purchased the rifle or to investigate whether Ms. Destfino committed

17  perjury when she testified that she was not the purchaser of the rifle.  (Pet. at consecutive p. 8.)

18  As discussed above, the fact that Ms. Destfino's name appears on the bill of sale for the rifle is of

19  minimal importance to the charges against petitioner.  Even if the jury had been informed that

20  Ms. Destfino purchased the rifle, there is no reasonable possibility, under the circumstances of

21  this case, that the result of the proceedings would have been different.  The rifle was found in a

22  cubbyhole hidden within the closet of petitioner's master bedroom with his name and social

23  security number engraved on it in a manner consistent with petitioner's labeling of his tools and

24  other personal property.  Petitioner has failed to demonstrate prejudice with respect to this claim.

25  Accordingly, he is not entitled to relief.

26  /////

1              g.  <u>Prior Felony Conviction</u>

2              Petitioner claims that his trial counsel rendered ineffective assistance in failing to

3 advise petitioner to remain silent when questioned about his prior felony conviction.   (Traverse

4 at 6.)  Specifically, petitioner argues that

> counsel failed to advise petitioner to take the 5th Amendment
> when the prosecutor asked petitioner about a prior felony
> conviction in 1976, "<u>counsel said admit the charge.</u>"  It was learned
> later, if petitioner had taken the 5th, the prosecutor would have to
> prove that case in court before continuing with this trial.
> Prosecutor used that admition [sic] as evidence.

(<u>Id.</u>)

10              The state court record reflects that petitioner was advised by the trial judge that if

11 he did not wish to admit his prior conviction he was entitled "a court trial on it."  (RT at 144.)

12 Petitioner was specifically told by the trial judge that he had

> the right to have the jury to decide whether you suffered that prior
> assault with a deadly weapon conviction in 1977 in Sacramento
> County Case Number 51113, or you have the right to have a court
> trial on it.  At either such trial, you have the right to see and hear
> the evidence that would be presented to prove that prior conviction
> against you, the documents that you suffered that conviction.
>
> And you have the right to cross-examine any evidence that would
> be presented.  And you have the right to prove that you didn't
> suffer that conviction.
>
> That doesn't mean you question whether you are guilty or innocent,
> only that that conviction didn't happen.
>
> You have the right to ask me to order people to come to court to
> support any challenge you would want to make of that prior
> conviction, and you have the right to remain silent and not say
> anything that would prove that conviction out of your own mouth.

(<u>Id.</u> at 144-45.)  Petitioner stated that he understood all of these rights.  (<u>Id.</u> at 145.)  After

conferring with his attorney, petitioner admitted the prior conviction.  (<u>Id.</u> at 143-145.)

25              Petitioner was told by the trial court that he was not required to admit the prior

26 conviction and that if he chose to have a court or jury trial to prove the fact of the conviction he

1   had the right to "take the 5th Amendment" on that subject.  Petitioner cannot demonstrate that he

2   suffered prejudice as a result of his trial counsel's alleged failure to give him the same advice that

3   the trial judge provided to him on the record.  In addition, in assessing an ineffective assistance

4   of counsel claim "[t]here is a strong presumption that counsel's performance falls within the

5   'wide range of professional assistance.'"  Kimmelman, 477 U.S. at 381 (quoting Strickland, 466

6   U.S. at 689).  There is also a strong presumption that counsel "exercised acceptable professional

7   judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990)

8   (citing Strickland, 466 U.S. at 689).  Petitioner has failed to overcome the strong presumption

9   that his counsel's advice to admit the prior conviction fell outside the wide range of professional

10  assistance.  Accordingly, he is not entitled to relief on this claim of ineffective assistance of

11  counsel.

12          h.  Failure to Move for New Trial

13          Petitioner next claims that his trial attorney rendered ineffective assistance by

14  failing to follow petitioner's advice to request a new trial.  He argues, in essence, that the

15  accumulation of errors at his trial should have caused counsel to file a motion for new trial.  (See

16  Traverse at 7.)   This court has analyzed all of petitioner's claims and has determined that there

17  was no error that rendered his trial fundamentally unfair.  Counsel apparently determined that a

18  motion for new trial lacked merit.  Under the circumstances of this case, that conclusion was not

19  outside the wide range of professional assistance.  Accordingly, petitioner is not entitled to relief

20  on this claim.

21          3.  Appellate Counsel

22          Petitioner claims that his appellate counsel rendered ineffective assistance because

23  she "abandoned" petitioner after his convictions were affirmed on appeal, and "would not present

24  all the arguments petitioner had provided her."  (Traverse at 8.)  Specifically, petitioner claims

25  that appellate counsel "could have submitted a rehearing at the appellate level, and a notice of

26  /////

petitioner's review to the Supreme Court" and that she "could have represented petitioner

throughout all the levels of the courts."  (Id.)

Petitioner's claim that his appellate counsel rendered ineffective assistance by

failing to pursue a petition for review and/or discretionary challenges to petitioner's conviction is

meritless.  Counsel had no legal obligation to continue her representation of petitioner after the

direct appeal was pursued unsuccessfully and petitioner had no constitutional right to appointed

counsel thereafter.  Prisoners do not have a constitutional right to counsel when mounting

collateral attacks upon their convictions, nor do they have this right when pursuing a

discretionary appeal on direct review of a conviction.  Pennsylvania v. Finley, 481 U.S. 551, 555

(1987).  Clearly established federal law provides that "the right to appointed counsel extends to

the first appeal of right, and no further."  (Id.)  See also Murray v. Giarratano, 492 U.S. 1, 7

(1989).

Petitioner's appellate counsel apparently reviewed the trial transcripts and

concluded that petitioner's claims of insufficient evidence, improper witness behavior, and

ineffective assistance of trial counsel, none of which were raised on direct appeal, lacked merit.

As described above, this court has reached the same conclusion.  Appellate counsel's decision to

press only claims with arguably more merit was "within the range of competence demanded of

attorneys in criminal cases."  McMann v. Richardson, 397 U.S. 759, 771 (1970).  Accordingly,

petitioner is not entitled to relief on his claim of ineffective assistance of appellate counsel.[11]

---

[11] In his supplemental traverse filed September 7, 2004, petitioner makes the following contention:

> A Marsden Hearing is requested to dismiss counsel on his
> ineffectiveness of assistance and incompetence.  In court 60
> minutes later, Judge Keller said: "You don't need another attorney,
> this ones fine, lets wrap up this case."  A clear case of, miscarriage
> of justice.

(Supplemental Traverse at 9.)  To the extent petitioner is attempting to belatedly raise a Marsden claim in this manner, relief should be denied.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (a traverse is not the proper pleading to raise additional grounds for relief); see

1          E. Evidentiary Hearing

2          Petitioner requests an evidentiary hearing on his claims. Pursuant to 28 U.S.C.

3  Section 2254(e)(2), a district court presented with a request for an evidentiary hearing must first

4  determine whether a factual basis exists in the record to support a petitioner's claims and, if not,

5  whether an evidentiary hearing "might be appropriate." Baja v. Ducharme, 187 F.3d 1075, 1078

6  (9th Cir. 1999). See also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005); Insyxiengmay v.

7  Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005). A petitioner must also "allege[] facts that, if

8  proved, would entitle him to relief." Schell v. Witek, 218 F.3d 1017, 1028 (9th Cir. 2000) (en

9  banc). Petitioner has not demonstrated that any additional facts need to be determined in order to

10  resolve the claims raised in the instant petition. Further, this court has determined that relief as

11  to petitioner's claims should be denied on the merits because the state court's decision was not

12  contrary to, or an unreasonable application of, clearly established federal law or based on an

13  unreasonable determination of the facts. Accordingly, an evidentiary hearing is not warranted

14  with respect to any of petitioner's claims. See Williams, 529 U.S. at 445; Earp, 431 F.3d 1166.

15          For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

16  application for a writ of habeas corpus be denied.

17          These findings and recommendations are submitted to the United States District

18  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty

19  days after being served with these findings and recommendations, any party may file written

20  _____

21  also Greenwood v. Fed. Aviation Admin., 28 F.3d 971, 977 (9th Cir. 1994) ("we review only
   issues which are argued specifically and distinctly in a party's opening brief"). Even if such a
22  claim had been properly raised, petitioner has failed to demonstrate a constitutional violation.
   The Ninth Circuit Court of Appeals has ruled that in assessing a Marsden claim in the context of
23  a habeas corpus proceeding, the Sixth Amendment requires only "an appropriate inquiry into
   the grounds of such a motion, and that the matter be resolved on the merits before the case goes
   forward." Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc). See also Hudson v.
24  Rushen, 686 F.2d 826, 829 (9th Cir. 1982) ("Thus, the state trial court's summary denial of a
   defendant's motion for new counsel without further inquiry violated the Sixth Amendment.")
25  Petitioner concedes that the trial court spent a full hour addressing his complaints regarding his
   trial counsel before denying petitioner's request for new counsel. Accordingly, the state trial
26  court's handling of petitioner's motion for substitute counsel passes constitutional muster.

1   objections with the court and serve a copy on all parties.  Such a document should be captioned

2   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

3   shall be served and filed within ten days after service of the objections.  The parties are advised

4   that failure to file objections within the specified time may waive the right to appeal the District

5   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

6   DATED: November 1, 2006.

7

8   _____

9   DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

10  DAD:8:caico1363.hc

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26